**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

Georgia Higher Education
Healthcare Initiative, Inc.,
a Georgia nonprofit corporation,

Plaintiff,

v. Civil Action File No. ___________

National Center for Education
Statistics, a component of the Institute
of Education Sciences within the United
States Department of Education,

Defendant.

**VERIFIED COMPLAINT AND PRAYER FOR PRELIMINARY INJUNCTION**

**Introduction**

1. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Plaintiff the Georgia Higher Education Healthcare Initiative, Inc. ("Georgia Healthcare Initiative") seeks judicial review of final agency action by the National Center for Education Statistics ("National Center"), an agency within the U.S. Department of Education, that unlawfully refuses to correct verified data errors in the Integrated Postsecondary Education Data System ("Data System") for Augusta University, a member institution of the Board of Regents of the University System of Georgia.

2. Specifically, the National Center refused to rectify a clerical tallying error and refused to reclassify Augusta University's Doctor of Nursing Practice and Doctor of Physical Therapy degrees from Award Level 18 (Doctor's degree – professional practice) to Award Level

17 (Doctor's degree – research/scholarship). This clerical error resulted in an inaccurate, categorical misclassification of Augusta University's doctoral degrees and caused the Data System and, by extension, the Carnegie Foundation for the Advancement of Teaching ("Carnegie"), to under-recognize Augusta University's research activity in the very consequential Carnegie Classification of Institutions of Higher Education ("Carnegie Classification"). Ex. A.

3. The National Center's refusal relies on an unwritten internal policy known as the "one-year revision" or "Prior Year Data Revision System" rule (the "One-Year Custom") that bars any data revisions or reclassification, even for clerical errors, more than one collection cycle after submission. This "one-year custom" does not appear in any statute or regulation, offers no official exceptions or appeal processes, and was never adopted through the notice-and-comment rulemaking required by 5 U.S.C. § 553. The application of this "one-year custom" is causing injury to the Georgia Healthcare Initiative.

4. Because the National Center continues to classify the Doctor of Nursing Practice and the Doctor of Physical Therapy degrees as professional-practice rather than as research/scholarship doctorates, the Carnegie Classification cannot recognize Augusta University as a "Very High Research Activity" ("R1") institution because Carnegie relies exclusively on the Data System data for classification of doctorate degrees.

5. The National Center's refusal is arbitrary, capricious, an abuse of discretion and contrary to law. The one-year policy conflicts with the commands of 20 U.S.C. § 9543. Georgia Healthcare Initiative seeks declaratory, injunctive, and mandamus relief requiring the National Center to correct the clerical error and misclassification that prevents Augusta University's Doctor of Nursing Practice and the Doctor of Physical Therapy degrees being classified as Award Level 17 and to set aside the unlawful and capricious one-year custom.

6. This case concerns an acknowledged data entry error and the arbitrary refusal of a federal agency to correct that error despite recognizing its inaccuracy and the substantial harm it causes.

7. This refusal to correct an undisputed error has impaired and continues to impair the mission of the Georgia Healthcare Initiative, has caused it to divert resources from its efforts to fulfill its mission and threatens future financial loss to it and to those institutions it seeks to serve.

**Parties**

8. Plaintiff the Georgia Healthcare Initiative is a non-profit corporation organized under Georgia law that supports increasing access to health care across the State. Specifically, the Georgia Healthcare Initiative's mission is to strengthen Georgians' health outcomes by improving the state's healthcare workforce. The Georgia Healthcare Initiative is headquartered in Augusta, Georgia and therefore, directly feels the impact of the successes and failures of our local healthcare workforce. The Georgia Healthcare Initiative depends on the research and academic status of Georgia's universities to fulfill its mission, particularly the research and academic status of Augusta University.

9. Defendant National Center is a federal statistical agency within the meaning of 5 U.S.C. § 701(b)(1) and was established by 20 U.S.C. § 9541. The National Center must collect, analyze, and disseminate complete and accurate education statistics. 20 U.S.C. § 9543.

## Jurisdiction and Venue

10. This action arises under the laws of the United States and the Administrative Procedure Act, 5 U.S.C. § 702, § 703, and § 704. This Court has jurisdiction under 28 U.S.C. § 1331.

11. Sovereign immunity for this action is waived in that Plaintiff seeks non-monetary relief against a federal agency acting unlawfully. 5 U.S.C. § 702.

12. The National Center's refusal to correct the clerical error and reclassify Augusta University's Data System data is a final agency action within the meaning of 5 U.S.C. § 704, marking the consummation of the agency's decision-making process with no further administrative remedy available.

13. The Georgia Healthcare Initiative resides in the Augusta Division of the Southern District of Georgia. This action does not involve real estate. Venue lies in this Court. 28 U.S.C. § 1391(e)(1).

14. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202, vacatur relief under 5 U.S.C. § 706 and mandamus relief by 28 U.S.C. § 1361.

15. The effects of the National Center's actions are felt in this district, where Augusta University is located and the Georgia Healthcare Initiative's operations are centered.

## Standing

### Organizational Standing

16. The Georgia Healthcare Initiative has Article III standing based on organizational standing and satisfies the zone of interests test applicable to Administrative Procedure Act claims.

17. The Georgia Healthcare Initiative is a nonpartisan 501(c)(3) advocacy organization whose mission is to improve healthcare outcomes, to address nursing and physician shortages, and to strengthen the research ecosystem in Georgia.

18. The National Center's refusal to correct acknowledged data errors has caused and continues to cause concrete injury to the Georgia Healthcare Initiative by directly affecting and interfering with the Georgia Healthcare Initiative's core business activities.

19. The Georgia Healthcare Initiative was incorporated November 4, 2024, to address healthcare workforce shortages.

20. The Georgia Healthcare Initiative is a 501(c)(3) tax exempt non-profit corporation financed to date by charitable contributions. It also seeks grants for itself and the institutions it serves to promote its goals. It has pending grant applications with the Georgia Health Foundation and the NIHCM Foundation.

21. The healthcare workforce shortage in Georgia has existed for many years. Despite decades of effort, Georgia continues to suffer a significant shortage of registered nurses and medical doctors. Georgia ranks in the bottom 20% of states for healthcare professionals per capita. While Georgia's public and private medical and nursing schools have expanded enrollment, the scale of growth has not matched the rising demand.

22. Efforts to remedy shortages have not been adequate. Despite expanded class sizes in nursing and medical schools, Georgia's efforts have not been sufficient to meet growing healthcare workforce demands. According to the 2024 Georgia Board of Health Care Workforce 2024 Composite Match Report, over 68% of Georgia medical graduates leave the state for residency, contributing to the physician shortage, as many do not return.

23. The Georgia Healthcare Initiative is engaged in efforts to generate collaborative solutions to improve the number of registered nurses and medical doctors practicing in Georgia. By bringing together healthcare, academic institutions, and communities, the Georgia Healthcare Initiative is striving to develop actionable steps to expand education and retention efforts. The time is now to expand the state's healthcare workforce education and retention capabilities.

24. The Georgia Healthcare Initiative's focus is on two specific areas of action:

a) Strengthening the entry pipelines into medical and nursing schools.

b) Improving retention in the profession and in Georgia.

The Georgia Healthcare Initiative's goal is to achieve measurable progress toward improving Georgia's ranking in active registered nurses and medical doctors per capita within the next eighteen months that will provide a foundation for further improvement.

25. The Georgia Healthcare Initiative is in the business of improving healthcare outcomes and strengthening the healthcare research ecosystem in Georgia. The Georgia Healthcare Initiative's core activities include advocating for healthcare improvements, addressing workforce shortages, lobbying the Georgia legislature, and promoting the development of Georgia's healthcare research capacity. Augusta University, Georgia's only public academic medical center and Georgia's flagship public health sciences research university, is central to the Georgia Healthcare Initiative's ability to conduct these core activities.

26. Direct Interference with Core Activities. The National Center's refusal to correct the Data Systems' data directly affects and interferes with the Georgia Healthcare Initiative's core business activities. Augusta University's incorrect R2 designation, caused by the National Center's refusal to correct acknowledged data errors, undermines the Georgia Healthcare Initiative's ability

to secure competitive research funding, to facilitate success in recruiting top clinical and research faculty for Augusta University and other Georgia institutions, and to expand graduate medical education programs for Augusta University. This directly impairs the Georgia Healthcare Initiative's ability to achieve its mission of strengthening Georgia's healthcare research ecosystem.

27. Mission Frustration. Because Augusta University is Georgia's only public academic medical center, Augusta University's diminished research status directly frustrates the Georgia Healthcare Initiative's organizational mission. The Georgia Healthcare Initiative cannot effectively advocate for healthcare improvements in Georgia when the state's only public academic medical center is systematically disadvantaged by federal data errors that the National Center refuses to correct.

28. The Georgia Healthcare Initiative must divert resources because the National Center's actions directly affect and interfere with the Georgia Healthcare Initiative's core business activities by harming the institution without which the Georgia Healthcare Initiative cannot fulfill its mission.

29. The Georgia Healthcare Initiative is a 501(c)(3) nonprofit incorporated for the explicit purpose of growing Georgia's healthcare research and workforce ecosystem in partnership with the state's academic medical institutions, primarily Augusta University. The Georgia Healthcare Initiative's ability to fulfill its organizational mission, attract staff, and pursue programmatic funding is structurally dependent upon the accuracy of the Carnegie Classification of its primary institutional partner. The National Center's failure to correct a known clerical error has caused Augusta University to appear as R2 in every federal grant database, every foundation eligibility screen, and every program officer's institutional reference since at least June, 2025, when Augusta University disclosed the error to the Georgia Healthcare Initiative. Augusta

University and the Georgia Healthcare Initiative were unsuccessful in efforts to have the National Center correct its data, a prerequisite for Carnegie to change Augusta University's status from R2 to R1. Exs. A, B, C, D.

30. Since June 2025, every grant application that the Georgia Healthcare Initiative has contemplated or planned in partnership with Augusta University has been evaluated against a false institutional credential. This is not a speculative injury. This is an ongoing, concrete, and documentable harm to an organization whose founding mission is inseparable from Augusta University's research classification.

31. The National Science Foundation Enabling Partnerships to Increase Innovation Capacity (EPIIC, NSF 23-625) solicitation uses the Carnegie Classification explicitly as its entire eligibility boundary thereby impairing access to funding for an R1 institution that is misclassified as R2.

32. The Robert Wood Johnson Foundation – Health Equity Scholars for Action program uses Carnegie Classification as an eligibility and targeting criterion thereby impairing access to funding for an R1 institution that is misclassified as R2.

33. The National Center's refusal to correct data that all parties acknowledge is incorrect impairs the Georgia Healthcare Initiative's ability to strengthen Georgia's healthcare research ecosystem because that ecosystem should have the benefit of Augusta University's proper classification as an R1 research institution.

34. The Georgia Healthcare Initiative's core business of strengthening healthcare research is directly impaired by the National Center's action and inaction that systematically disadvantages Georgia's only public academic medical center.

35. The Georgia Healthcare Initiative's injury is concrete and particularized. It is not abstract or generalized. The Georgia Healthcare Initiative's mission focuses specifically on Georgia's healthcare ecosystem, and Augusta University is Georgia's only public academic medical center. The perpetuation of erroneous data about Augusta University directly impacts the Georgia Healthcare Initiative's ability to conduct its core activities. The harm to the Georgia Healthcare Initiative is ongoing and irreparable.

36. The National Center's refusal to correct acknowledged data errors directly interferes with the institution central to the Georgia Healthcare Initiative's ability to perform its core organizational functions.

**Zone of Interests Standing**

37. The Georgia Healthcare Initiative's interests fall within the zone of interests protected by the Education Sciences Reform Act, 20 U.S.C. § 9543, that mandates that the National Center collect and disseminate "complete, accurate, and useful" education statistics, and by the Administrative Procedure Act, that provides protection against arbitrary agency action.

38. The Georgia Healthcare Initiative's interests in accurate data affecting Augusta University's healthcare research capacity fall within the zone of interests protected by the Education Sciences Reform Act.

39. The Georgia Healthcare Initiative seeks to protect its own organizational mission and the interests of Georgia citizens in receiving quality healthcare through a properly functioning academic medical center that is not handicapped by an incorrect and less favorable research rating.

**Data System and the One-Year Custom**

40. The Data System (https://nces.ed.gov/ipeds/about-ipeds) is the federal government's comprehensive system for collecting and publishing higher-education statistics. Each year, institutions must report degree conferrals by award level in the "Completions" survey.

41. The National Center enforces an unwritten one-year custom that allows revisions only for the immediately preceding year and bars any reclassification thereafter (https://surveys.nces.ed.gov/ipeds_py/). Ex. C. The policy is not required by statute or regulation and has never been adopted through notice-and-comment rulemaking.

42. During academic years 2021 through 2023, Augusta University committed a clerical error and misclassified its Doctor of Nursing Practice and Doctor of Physical Therapy degrees as Award Level 18 (Doctor's degree – professional practice) instead of Award Level 17 (Doctor's degree – research/scholarship) in its Data System Completions submissions.

43. This clerical error and misclassification excluded those programs from the federal count of research/scholarship doctorates. Correcting the error and the classification would properly recognize those degrees as research doctorates consistent with their curricular rigor, research components, and institutional designation by the University System of Georgia.

44. After discovering the clerical error and misclassification, Augusta University and the University System of Georgia corrected the data and verified the correct classification. Chancellor Sonny Perdue transmitted the verified reclassification to the National Center and Carnegie in 2025. Ex. A.

45. On October 3, 2025, the Georgia Healthcare Initiative, through its Executive Director Laurie Ott, transmitted a formal written demand to the National Center entitled *"Legal Notice – Request for Integrated Postsecondary Education Data System Data Modification."* Ex. B.

46. The letter, addressed to Dr. Matthew Soldner, Acting Commissioner of the National Center, requested modification of Augusta University's Data System records for Academic Years 2021 through 2023 to reclassify the Doctor of Nursing Practice and Doctors of Physical Therapy degrees from Award Level 18 to Award Level 17 (the "Degree Data Reclassification"). *Id.*

47. The demand explained that Carnegie had acknowledged the validity of the Degree Data Reclassification but could not act because it relies exclusively on the Data System's data. It emphasized that accurate degree-type classification is essential for Georgia's healthcare workforce and for Augusta University's research and development opportunities. *Id.*

48. The Georgia Healthcare Initiative's letter noted that the One-Year Custom is a "non-binding custom" applied through the Prior Year Data Revision System and asserted that applying it to bar the Degree Data Reclassification was "unreasonable, arbitrary, and capricious" under the Administrative Procedure Act. *Id.*

49. The letter urged the National Center to depart from the one-year custom, given the surrounding facts and circumstances, and warned that the Georgia Healthcare Initiative would seek declaratory, injunctive, and mandamus relief if the National Center did not act within thirty (30) days. *Id.* The National Center received the correspondence but took no corrective action and did not respond.

50. The National Center acknowledged the error to Augusta University but refused to reclassify the Doctor of Nursing Practice and Doctor of Physical Therapy degrees. Dr. Soldner of the National Center wrote that making the change "would require substantial changes in the Data System data architecture at a substantial cost" and that only one-year revisions are permitted. There was no elaboration on the claimed "substantial cost". The National Center offered no statutory basis, cost analysis, or appeal mechanism. Ex. C.

51. The National Center's refusal marked the consummation of the National Center's decision-making process. No further administrative remedy exists, rendering the decision final and subject to judicial review.

52. The Carnegie Classification of Institutions of Higher Education (https://carnegieclassifications.acenet.edu/) categorizes research universities as R1 ("Very High Research Activity") based on the number and proportion of research/scholarship doctorates and R&D expenditures, both derived solely from Data System data.

53. Mushtaq Gunja, Executive Director of Carnegie, confirmed that Carnegie received Augusta University's verified reclassification and Chancellor Perdue's letter but explained that Carnegie "relies solely on Data System data." Ex. D. Thus, Augusta University's classification cannot change without the National Center's reclassification.

54. Because the National Center continues to classify Augusta University's Doctor of Nursing Practice and Doctor of Physical Therapy degrees as professional-practice doctorates (Award Level 18), Carnegie excluded Augusta University from its published list of R1 category institutions for 2025 through 2028. If the clerical error and those programs properly classified as

research/scholarship doctorates were to be corrected (Award Level 17), Augusta University's Carnegie Classification would be R1 through 2028.

55. The clerical error and misclassification gravely harm the Georgia Healthcare Initiative and the public interest by diminishing Augusta University's ability to attract faculty and its competitiveness for research funding, and the Georgia Healthcare Initiative's ability to support Augusta University and Georgia's healthcare research workforce, which is core to the mission of the Georgia Healthcare Initiative.

**C. Causation and Redressability**

56. The Georgia Healthcare Initiative's injuries are directly caused by the National Center's refusal to correct the Data System data. The causal chain is direct, documented, and contains no speculative links:

(1) Augusta University submitted data misclassifying the Doctor of Nursing Practice and the Doctor of Physical Therapy degrees at Award Level 18 instead of Award Level 17;

(2) Carnegie Classification relied on this Data System to assign Augusta University an R2 designation for 2025 to 2028;

(3) Augusta University discovered the error and the University System of Georgia Chancellor verified it;

(4) The National Center acknowledged the data is incorrect but refused correction based on an unwritten policy;

(5) Carnegie explicitly stated it cannot revise Augusta University's designation without corrected Data System data; and

(6) Augusta University's incorrect R2 designation for 2025 through 2028 directly interferes with the Georgia Healthcare Initiative's core activities and forces resource diversion.

57. The National Center's official, Dr. Matthew Soldner, acknowledged that Augusta University "did not appropriately characterize" the degrees and understood their importance "as these data are among the inputs to a Carnegie Classification." Ex. C.

58. Dr. Soldner stated that the refusal rests on cost: correcting the data "would require substantial changes in our Data System data architecture at substantial cost." The refusal rests solely on this unwritten "one-year revision" policy, not any statutory mandate or published regulation. Ex. C.

59. Carnegie Executive Director Mushtaq Gunja confirmed that Carnegie is unable to act on information without corresponding changes to the publicly available data in the federal Data System database. Ex. D.

60. The National Center has not responded to the Georgia Healthcare Initiative's October 3, 2025, letter (Ex. B) and continues to refuse to correct the acknowledged data errors in the Data System for academic years 2021-2023.

61. The National Center has never provided any statutory, regulatory, or other legal authority that supports its refusal to correct the data beyond citing the "one-year revision" policy.

62. The "one-year revision" policy limits data corrections in the Data System to the "immediate prior year" only, regardless of the nature of the error, the reason for delayed discovery, the harm caused by perpetuating the error, or the ease of correction.

63. The "one-year revision" policy has never been promulgated through notice-and-comment rulemaking under the Administrative Procedures Act. 5 U.S.C. § 553.

64. The "one-year revision" policy has never been published in the Federal Register as a proposed or final rule.

65. The "one-year revision" policy does not appear in the Code of Federal Regulations.

66. The "one-year revision" policy has never been subjected to public comment or review.

67. The "one-year revision" policy directly contradicts the National Center's statutory mandate under the Education Sciences Reform Act to collect and disseminate "complete, accurate, and useful" education statistics. 20 U.S.C. § 9543(a)(1).

68. Dr. Soldner's August 6, 2025, email justified the policy solely on grounds of "substantial changes in our data architecture at substantial cost," without any analysis of whether those costs justify perpetuating acknowledged errors or whether alternative solutions exist. Ex. C.

69. The National Center has made no showing that correcting three years of data for two degree programs at one institution would impose "substantial cost" or require "substantial changes in our data architecture." Ex. C.

70. The unwritten "one-year revision" policy is inconsistent with fundamental principles of data integrity and quality assurance. Allowing known errors to persist indefinitely undermines the reliability and usefulness of the Data System data for all stakeholders.

**Harm to Augusta University, the Georgia Healthcare Initiative and Georgia Citizens**

71. The perpetuation of the incorrect Data System data and Augusta University's resulting R2 designation causes substantial, ongoing and irreparable harm to Augusta University, the Georgia Healthcare Initiative and Georgia citizens.

72. Augusta University's incorrect R2 designation affects its competitive position for federal research grants. Many federal grant programs consider institutional research ratings in scoring applications, and R1 designation provides a competitive advantage.

73. Augusta University's R2 designation affects faculty recruitment and retention. Top research faculty prefer R1 institutions due to enhanced research resources, prestige, and collaborative opportunities.

74. Augusta University's R2 designation affects graduate student recruitment. Prospective doctoral students in biomedical sciences and health fields seek R1 institutions for superior research training opportunities.

75. Augusta University's R2 designation affects partnership opportunities with the Georgia Healthcare Initiative. Research collaborations, industry partnerships, and clinical trial sponsorships often favor partnerships with R1 institutions.

76. Augusta University's R2 designation affects Augusta University's ability to expand graduate medical education and residency training programs that are critical to addressing Georgia's physician shortage.

77. As documented in the Georgia Healthcare Initiative's October 3, 2025 letter, the incorrect R2 designation harms Augusta University's ability to secure competitive research funding, expand graduate medical education/residency training slots, recruit and retain top clinical and research faculty, and develop innovative partnerships, all critical to addressing Georgia's severe statewide physician shortages, rural healthcare shortages, and training needs for the next generation of healthcare providers. Ex. B.

78. The Georgia Healthcare Initiative has exhausted all administrative remedies and has no adequate alternative means of obtaining relief.

79. The Georgia Healthcare Initiative's injuries are redressable by the requested relief. If this Court orders the National Center to correct the Data System's data, Carnegie will revise Augusta University's designation to R1 through 2028, enabling the Georgia Healthcare Initiative to partner with Augusta University to compete for research funding and to recruit top faculty that the Georgia Healthcare Initiative is actively seeking for Augusta University, thereby eliminating the direct interference with the Georgia Healthcare Initiative's core activities and the need for continued resource diversion.

80. The Administrative Procedures Act authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed" and to "hold unlawful and set aside agency action... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1)-(2)(A). The Mandamus Act authorizes courts to "compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

81. The Georgia Healthcare Initiative has herein identified specific unlawful conduct, the National Center's refusal to correct Augusta University's 2021 through 2023 Data System data based on its non-binding one-year custom, and has demonstrated how this conduct directly interferes with the Georgia Healthcare Initiative's core business activities. This has caused concrete injury through mission frustration and resource diversion.

82. The Georgia Healthcare Initiative has standing based on: (1) organizational standing because Defendant's actions directly affect and interfere with the Georgia Healthcare Initiative's core business activities; (2) zone of interests standing under the Administrative

Procedures Act and the Education Sciences Reform Act; and (3) direct causation and clear redressability.

## COUNT I

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT ARBITRARY AND CAPRICIOUS AGENCY ACTION (5 U.S.C. § 706(2)(A))

83. Paragraphs one through eighty-two are realleged and incorporated into Count I.

84. The Administrative Procedure Act authorizes judicial review of final agency action and directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

85. The National Center's refusal to correct the acknowledged Data System data errors constitutes final agency action subject to judicial review under the Administrative Procedure Act.

86. The National Center's refusal is arbitrary and capricious for the following reasons:

a) The National Center acknowledged that the data is incorrect and understands the significant harm caused by the error yet refuses to correct it based solely on an unwritten internal policy with no statutory or regulatory foundation.

b) The National Center failed to consider relevant factors, including: the nature of the error (simple misclassification), the reason for the error (inadvertent clerical mistake), the certification of corrected data by the University System of Georgia, the substantial harm caused by perpetuating the error, and the importance of data accuracy to the National Center's statutory mission.

c) The National Center mechanistically applied the "one-year revision" policy without any individualized consideration of Augusta University and the Georgia Healthcare Initiative's circumstances or any weighing of costs and benefits.

d) The National Center asserts that correction of data error would cause "substantial changes in our data architecture at substantial cost" but does not provide any analysis that the cost to correct the data for Augusta University would be "substantial." Furthermore, the National Center has not quantified what it means when it asserts that the cost would be "substantial" or whether this unsupported "substantial cost" outweighs the harm of perpetuating known errors.

e) The National Center's action contradicts its statutory mandate to collect and disseminate "complete, accurate, and useful" education statistics. Knowingly perpetuating inaccurate data is antithetical to this mission.

f) The National Center's reliance on an unwritten policy violates administrative law requiring that policies affecting regulated entities be adopted through proper procedures and be publicly available.

87. The National Center did not consider the importance of data accuracy, harm from perpetuating known errors, and its statutory mandate to ensure complete and accurate statistics.

88. The National Center's explanation that cost considerations prevent any correction of data more than one year old runs counter to its statutory mission and is implausible when applied to a simple correction of acknowledged clerical error.

89. The National Center's decision reflects an abuse of discretion. The National Center mechanistically applied an unwritten policy without exercising any judgment or discretion regarding the particular circumstances presented.

90. As a result of the National Center's arbitrary and capricious action, the Georgia Healthcare Initiative has suffered and continues to suffer injury to its organizational mission, has

been forced to divert resources, and is hampered in its advocacy for healthcare improvements in Georgia.

91. The Georgia Healthcare Initiative is entitled to relief under 5 U.S.C. § 706(2)(A) setting aside the National Center's refusal to correct the Data System data as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## COUNT II

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – AGENCY ACTION NOT IN ACCORDANCE WITH LAW (5 U.S.C. § 706(2)(A))

92. Paragraphs one through eighty-two are realleged and incorporated into Count II.

93. The National Center's refusal to correct the Data System data is "not in accordance with law" for the following independent reasons:

94. The Education Sciences Reform Act mandates that the National Center "collect, report, analyze, and disseminate statistical data related to education in the United States" and ensure that such data is "complete, accurate, and useful." 20 U.S.C. § 9543(a)(1). By knowingly perpetuating inaccurate data, the National Center violates its statutory mandate.

95. The "one-year revision" policy is unlawful because it was never properly promulgated. Agencies must follow notice-and-comment rulemaking procedures under 5 U.S.C. § 553 when adopting "legislative rules" that have the force of law. The National Center's policy effectively bars institutions from correcting inaccurate data more than one year old, regardless of circumstances, a substantive rule that binds the agency and regulated entities. Such a rule must be adopted through proper procedures.

96. Agency action not in accordance with law includes action wherein the agency will not consider an important aspect of the problem or refuses to articulate a rational connection

between the facts found and the choice made. The National Center has not articulated a rational connection between its cost concerns and the categorical refusal to correct acknowledged errors.

97. Congress enacted the Education Sciences Reform Act to ensure reliable data for policymaking, institutional planning, and public accountability through systems like the Data System. Allowing known errors to persist frustrates congressional intent and undermines the purposes of the statute.

98. The Georgia Healthcare Initiative is entitled to relief under 5 U.S.C. § 706(2)(A) setting aside the National Center's action as not in accordance with law.

## COUNT III

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – UNLAWFUL WITHHOLDING OF AGENCY ACTION (5 U.S.C. § 706(1))

99. Paragraphs one through eighty-two are realleged and incorporated into Count III.

100. The Administrative Procedure Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

101. The National Center has a statutory duty under 20 U.S.C. § 9543(a)(1) to collect and disseminate "complete, accurate, and useful" education statistics. This duty necessarily includes correcting known errors in the Data System data when those errors are brought to the National Center's attention, and the correct data is provided and certified.

102. The National Center has unlawfully withheld the act of correcting the Data System data for Augusta University's 2021-2023 degree completions despite:

a) Acknowledging that the data is incorrect.

b) Understanding the significant harm caused by the error.

c) Receiving corrected data from the University System of Georgia.

d) Having no statutory or regulatory prohibition against making the correction.

103. The National Center's duty to ensure data accuracy is legally required by statute and is discrete and mandatory. It is not discretionary.

104. The National Center has unreasonably refused to grant Augusta University's request for correction and the Georgia Healthcare Initiative's demand for correction, providing no substantive response to the Georgia Healthcare Initiative's October 3, 2025, letter.

105. The failure to correct known errors constitutes unlawful withholding of agency action required by statute.

106. The Georgia Healthcare Initiative is entitled to relief under 5 U.S.C. § 706(1), compelling the National Center to correct the Data System data for Augusta University.

**COUNT IV**

**MANDAMUS RELIEF (28 U.S.C. § 1361)**

107. Paragraphs one through eighty-two are realleged and incorporated into Count IV.

108. The Mandamus Act provides that federal district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

109. To obtain mandamus relief, a plaintiff must establish: (1) a clear right to the relief sought; (2) a clear duty on the part of the defendant to do the particular act; and (3) no other adequate remedy available.

110. The Georgia Healthcare Initiative has a clear right to accurate Data System data concerning Augusta University. The Georgia Healthcare Initiative's organizational mission depends upon Augusta University's proper classification and ability to function as Georgia's flagship health sciences research institution. The Education Sciences Reform Act creates a duty to

ensure data accuracy, and the Georgia Healthcare Initiative has a corresponding right to enforce that duty. The Administrative Procedures Act provides a right to be free from arbitrary agency action.

111. The National Center has a clear, non-discretionary duty under 20 U.S.C. § 9543(a)(1) to ensure that Data System data is "complete, accurate, and useful." When presented with acknowledged errors and certified correct data, the National Center has a ministerial duty to correct the data. This is not a matter of discretionary judgment but a basic data integrity function.

112. As detailed above, the Georgia Healthcare Initiative has no adequate alternative remedy. All administrative appeals have been exhausted. The Carnegie Classification cannot provide relief absent receiving corrected Data System data. Only judicial intervention by this Court can compel the National Center to perform its duty.

113. The duty to ensure data accuracy is ministerial and non-discretionary. Once an error is identified and correct data is certified, the National Center's duty to correct the database is clear and mandatory.

114. The harm flowing from the National Center's failure to act is substantial and ongoing, affecting Augusta University's research competitiveness, the Georgia Healthcare Initiative's mission, and healthcare outcomes for Georgia citizens.

115. Mandamus is appropriate. The National Center's refusal is based on an unwritten policy applied mechanistically without regard to the circumstances, demonstrating a clear abuse of discretion.

116. The Georgia Healthcare Initiative is entitled to a writ of mandamus compelling the National Center to correct the Data System data for Augusta University for academic years 2021 through 2023.

**COUNT V**

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

117. Paragraphs one through eighty-two are realleged and incorporated into Count V.

118. The Georgia Healthcare Initiative is suffering ongoing and irreparable harm caused by the National Center's continued publication of inaccurate data for Augusta University.

119. The Georgia Healthcare Initiative is entitled to a preliminary and permanent injunction ordering the National Center to cease publishing inaccurate data and ordering the National Center to publish accurate data concerning Augusta University.

WHEREFORE, Plaintiff Georgia Higher Education Healthcare Initiative respectfully requests that this Court:

1. Declare that Defendant's refusal to correct the acknowledged errors in the Data System data for Augusta University's degree completions for academic years 2021 through 2023 violates the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2)(A);

2. Declare that Defendant's reliance on an unwritten "one-year revision" policy is arbitrary, capricious, an abuse of discretion, and not in accordance with law;

3. Declare that Defendant's refusal to correct acknowledged data errors contradicts its statutory mandate under 20 U.S.C. § 9543(a)(1) to ensure that education statistics are "complete, accurate, and useful";

4. Order Defendant, pursuant to 5 U.S.C. § 706(1), to immediately correct the Data System database to reclassify Augusta University's Doctor of Nursing Practice and Doctor of Physical Therapy degree completions for academic years 2021, 2022, and 2023 from Award Level 18 to Award Level 17;

5. Issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, compelling Defendant to perform its non-discretionary duty to correct the Data System data;

6. Set aside Defendant's decision refusing to correct the Data System data as arbitrary, capricious, an abuse of discretion, and not in accordance with law, pursuant to 5 U.S.C. § 706(2)(A);

7. Preliminarily and permanently enjoin the National Center for Education Statistics from publishing inaccurate information concerning Augusta University.

8. Award Plaintiff its reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable authority;

9. Retain jurisdiction over this matter to ensure compliance with the Court's orders; and

10. Grant such other and further relief as the Court deems just.

Respectfully submitted,

*s/ John C. Bell, Jr.*
John C. Bell, Jr.
Georgia State Bar No. 048600
Pamela S. James
Georgia State Bar No. 389015
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
john@bellfirm.net
pam@bellfirm.net

COUNSEL FOR PLAINTIFF

## VERIFICATION

I, Laurie Ott, declare as follows:

1. I am the Executive Director of Georgia Higher Education Healthcare Initiative, Inc., the Plaintiff in this action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The factual statements contained herein are true and correct to the best of my knowledge, information, and belief, based on records maintained by the Georgia Higher Education Healthcare Initiative and information received from Augusta University and the University System of Georgia.

4. I verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 22nd day of May, 2026, in Augusta, Georgia.

Laurie Ott