**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| GEORGIA HIGHER EDUCATION HEALTHCARE INITIATIVE, INC., A GEORGIA NONPROFIT CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL CENTER FOR EDUCATION STATISTICS, A COMPONENT OF THE INSTITUTE OF EDUCATION SCIENCES WITHIN THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendant. | ) | Case No.: 1:26-cv-108 |

## MOTION TO DISMISS

COMES NOW Defendant, National Center for Education Statistics, by and through the United States Attorney for the Southern District of Georgia, and moves to dismiss this matter in its entirety pursuant to: Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(1) for lack of subject matter jurisdiction; Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; Fed. R. Civ. P. 17(a) for attempting to prosecute an action when Plaintiff is not the real party in interest; and Fed. R. Civ. P. 19(a) for failing to join a required party.

## INTRODUCTION

The crux of this lawsuit relates to erroneous educational data reported by Augusta University for academic years 2021 through 2023 involving its Doctor of Nursing Practice and Doctor of Physical Therapy academic programs (the "Erroneous

Augusta University Data") and its resulting alleged impact on Augusta University. *See* [Doc. 1, ¶¶ 1-2, 42, 72-77]; [Doc. 1-1]. The Carnegie Foundation for the Advancement of Teaching (the "Carnegie Foundation") classifies and publishes certain designations for institutions of higher education. *See* [Doc. 1, ¶¶ 2, 52, 54]. After Augusta University's inaccurate reporting of data, the Carnegie Foundation relied on the Erroneous Augusta University Data to categorize Augusta University as R2, which stands for "high research activity", rather than R1, for "very high research activity." *See* [Doc. 1, ¶¶ 2, 4, 31]. Augusta University and the Carnegie Foundation are not parties to this lawsuit, and neither Plaintiff nor Defendant are affiliated with Augusta University or the Carnegie Foundation.[1] Plaintiff's primary goal in this lawsuit is to require Defendant to correct the Erroneous Augusta University Data in its statistical data system. *See* [Doc. 1, *ad damnum* ¶¶ 4-5].

For this reason alone, dismissal is appropriate, as (1) Plaintiff lacks standing to maintain this lawsuit, (2) Plaintiff is not the real party in interest and is not permitted to bring Augusta University's potential claims, and (3) Plaintiff has not joined the Carnegie Foundation to this action, who is the only party capable of providing complete relief to Augusta University.

---

[1] Augusta University and the Carnegie Foundation are aware of the dispute surrounding the Erroneous Augusta University Data and have corresponded regarding a resolution without resorting to litigation. *See* [Doc. 1-4].

## I. Factual Background.[2]

Plaintiff Georgia Higher Education Healthcare Initiative is a non-profit, 501(c)(3) charitable corporation organized and incorporated in Georgia on or about November 4, 2024, by its Executive Director Laurie Ott. [Doc. 1, ¶¶ 8, 19-20, 45].[3] Accordingly, Plaintiff was not in existence when Augusta University inaccurately reported the Erroneous Augusta University Data for academic years 2021 through 2023. *See* [Doc. 1, ¶¶ 1-2, 42]; [Doc. 1-1]. Despite Plaintiff's name, Plaintiff has no formal affiliation with Augusta University or with the University System of Georgia.

Defendant is a federal statistical agency within the Department of Education. [Doc. 1, ¶¶ 1]. Defendant is required to process statistics, provided by higher education institutions, in a "timely fashion" according to procedures established by the Statistics Commissioner. *See* 20 U.S.C. § 9545.

Augusta University was responsible for submitting Integrated Postsecondary Education Data System ("IPEDS") completion submissions to Defendant for academic years 2021-2023. *See* [Doc. 1, ¶¶ 40-43]. Augusta University allegedly misclassified a Doctor of Nursing Practice degree and a Doctor of Physical Therapy degree as "Award Level 18 (Doctor's degree – professional practice)" rather than "Award Level 17

[2] For the purposes of this motion to dismiss only, and not as an admission of fact, Defendant sets forth allegations made in Plaintiff's Complaint.

[3] *See also* Exhibit 1, Plaintiff's Articles of Incorporation, a public document filed by Plaintiff with the Georgia Secretary of State; Exhibit 2, IRS Determination Letter (published on Plaintiff's website at https://www.gahehi.org/_files/ugd/78f1df_65ce75d8da2e4b33828d0dc4928f1b4c.pdf (accessed August 5, 2026)).

(Doctor's degree – research scholarship)" in said submissions. *See* [Doc. 1, ¶ 2]. The data was maintained by Defendant, as the Department of Education's statistical agency, for one year as proposed data. *See* [Doc. 1, ¶¶ 3, 41]. At any point during the year after the Erroneous Augusta University Data was reported, Augusta University could have corrected the data. *Id.* At the end of the year, the data was classified by Defendant as final data and the opportunity to alter or update the data was closed. *Id.*; [Doc. 1-3]. Defendant accepted the Erroneous Augusta University Data submissions and published the statistics as final data. *See* [Doc. 1, ¶¶ 41-44].

The Carnegie Foundation, a private entity unaffiliated with Defendant, accessed the publicly available data from the Defendant's website and utilized it as part of its system to categorize higher education institutions, including Augusta University, with its own classification system. *See* [Doc. 1, ¶¶ 2, 52-54]; [Doc. 1-4]. Along with other data, the Erroneous Augusta University Data was alleged to have contributed to the Carnegie Foundation's miscategorization of Augusta University as an "R2" research institution rather than an "R1" research institution.[4] *Id.*

Upon discovery, Augusta University and the University System of Georgia, by and through Chancellor Sonny Perdue, transmitted the reclassification request to Defendant in what appears to be August 2025. *See* [Doc. 1-1]. Likewise in October 2025, Plaintiff submitted a demand letter for reclassification. *See* [Doc. 1-2]. Said

[4] The Carnegie Foundation has published a "Research Activity Designations Fact Sheet" that discloses the methodology used to categorize educational institutions as R1, R2, or lower. *See* https://carnegieclassifications.acenet.edu/wp-content/uploads/2025/02/RAD-fact-sheet.pdf (accessed August 5, 2026).

demand requested a departure from the "one year rule" relative to reclassification. *Id.*

The one year rule was shared with Augusta University, via electronic mail, by Defendant's Acting Director Matthew E. Soldner on August 6, 2025 (prior to Plaintiff's demand of October 2025). *See* [Doc. 1-3]. Augusta University appealed the Carnegie Foundation's classification decision in an attempt to resolve the dispute between those entities. The Carnegie Foundation denied Augusta University's appeal for the subject years relative to research classification **but granted the appeal relative to the institutional classification of special focus to "medical schools and centers." Augusta was further advised by the Carnegie Foundation that all classifications "would be updated in 2028 based upon updated data."** *See* [Doc. 1-4] (emphasis added).

## STANDARDS OF REVIEW

### I. Rule 12(b) Standards

A Court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject-matter jurisdiction to hear the case. The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must have suffered an injury in fact, caused by the defendant's conduct, that is likely to be redressed if the issue is decided in Plaintiff's favor. *Id.*; *see also City of S. Miami v. Governor*, 65 F.4th 631, 636 (11th Cir. 2023) (holding the "Court has 'an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute.'")

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl, Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "A pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do." *Id.*

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). However, a district court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Likewise, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 556 U.S. at 678 – 679.

Accordingly, a court should not assume that a plaintiff can prove facts that are not alleged in the complaint. *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("[W]e must assume that the Union can prove the facts alleged in its amended complaint. It is not, however, proper to assume that the Union can prove facts that it has not alleged . . .").

## ARGUMENT

### I. Plaintiff lacks standing to maintain this civil action.

Plaintiff asserts standing based on "organizational standing" and further asserts that Plaintiff satisfies the "zone of interests" tests applicable to the Administration Procedure Act. Specifically, Plaintiff asserts: (1) Article III standing based on organizational standing; (2) Plaintiff satisfies the "zone of interests" test; (3) Agency action constitutes "direct interference with core activities"; and (4) Agency action constitutes "Mission frustration". These arguments fail for the following reasons. *See* [Doc. 1, ¶¶ 16-39].

#### a. Plaintiff lacks Article III organizational standing.

There are two requirements for organizational standing. First, a plaintiff organization does not have standing to sue without proof of an actual injury. *City of S. Miami*, 65 F.4th at 636-37. Second, a plaintiff organization must divert resources to counteract that injury. *Id.* at 636-38; *see also Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 778 F. Supp. 3d 56, 74 (D.D.C. 2025) (Organizational standing has two requirements, concrete injury that is more than a setback to abstract social interests and diversion of resources to counteract said injury.)

The Supreme Court has clarified that, while plaintiff organizations may sue on their own behalf, they must still "satisfy the usual standards for injury, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024). "Like an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *Id.* at 369-70. Specifically, the Court held, "According to the medical associations, FDA has 'impaired' their 'ability to provide services and achieve their organizational missions.' That argument does not work to demonstrate standing." *Id.* (internal citation omitted).

Further, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 370 (holding that the Court's prior decision in the "unusual case" of *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), "does not stand for the expansive theory that standing exists when an organization diverts its resources in response to a defendant's actions.").

Here, Plaintiff's argument that it has organizational standing fails. First, if any organization is injured, it is non-party Augusta University, not Plaintiff. As alleged in the Complaint, "The clerical error and misclassification [by the Carnegie Foundation] gravely harm [Plaintiff] and the public interest **by diminishing Augusta University's ability to attract faculty and its competitiveness for research funding**. . ." *See* [Doc. 1, ¶ 55]; *see also* [Doc. 1, ¶¶ 71-77] (listing impacts

to Augusta University because of an R2 designation by the Carnegie Foundation). More specifically, "the incorrect R2 designation harms Augusta University's ability to secure competitive research funding, expand graduate medical education/residency training slots, recruit and retain top clinical and research faculty, and develop innovative partnerships . . ." *Id.* at ¶ 77.

Additionally, Plaintiff was not incorporated until November of 2024 and did not obtain charitable 501(c)(3) status until March of 2025, more than a year after Augusta University inaccurately reported the Erroneous Augusta University Data for academic years 2021 through 2023. Accordingly, Plaintiff's formation was well after the determination by the Carnegie Foundation had been made as to Augusta University's categorization as an "R2" research institution. Plaintiff's formation was also after Defendant's agency action, and Plaintiff will be hard pressed to demonstrate how Defendant's action of processing the statistics erroneously reported to it by Augusta University affected Plaintiff's "core activities." Augusta University proximately caused any supposed injury via reporting the Erroneous Augusta University Data, and, if any entity is injured, it is Augusta University by its own erroneous reporting actions for academic years 2021 through 2023.

When the Complaint is read as a whole, it is clear that Plaintiff is merely asserting a setback to its "abstract social interest." Plaintiff asserts that the Georgia healthcare workforce is declining and that Plaintiff seeks grants to alleviate this condition and improve healthcare outcomes generally. Plaintiff claims that correction of the Erroneous Augusta University Data would assist in the organization's goals.

This is purely speculative, particularly since Plaintiff discusses how the healthcare workforce's decline has been ongoing and that the "healthcare workforce shortage in Georgia has existed for many years." *See* [Doc. 1, ¶ 21].

Most notably, Plaintiff is unable to demonstrate how reclassification of certain degrees would assist in the organization's goal of attracting healthcare workers. The degrees are still in force, presumably have enrollment in these programs, and the graduates are working in the nursing and physical therapy fields. The current classification as "professional doctorates" rather than "research degrees" is arguably more in line with Plaintiff's stated goals: increasing the number of healthcare *practitioners* in the State of Georgia. If anything, Plaintiff should be advocating against Augusta University for less focus on research and more focus on practitioner programs.

Finally, Plaintiff makes one conclusory allegation that is not sufficient to meet its minimal pleading burden as to diversion of resources. *See* [Doc. 1, ¶ 28]. Otherwise, as it relates to diversion of Plaintiff's resources, the Complaint is devoid of factual allegations necessary to survive this Motion.

**b. Plaintiff fails to satisfy the "zone of interests" test.**

The "zone of interests" test is a limiting test, not one intended to expand standing for the filing of a lawsuit and is based on the underlying substantive law. "[W]hen a party requests relief under the Administrative Procedure Act, we ask, as part of our review of prudential standing, 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or

regulated by the statute ... in question.'" *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011).

For statutorily created claims, the "'zone-of-interests limitation' is a 'requirement of general application' . . . [and] denies a right of review if the plaintiff's interests are so marginally related to . . . the purposes implicit in the statute that it cannot reasonable be assumed that Congress intended to permit the suit.'" *See Am. Bar Ass'n v. United States Dep't of Educ.*, 370 F. Supp. 3d 1, 18 (D.D.C. 2019) (summarizing relevant caselaw).

The substantive statute cited by Plaintiff relative to Defendant provides that Defendant's statistical center compiles data. *See* 20 U.S.C. § 9543. The purpose of Plaintiff is social advocacy for more healthcare workers. This is an extremely remote relationship. Plaintiff, who has the burden of establishing standing, is unable to demonstrate that Congress intended the establishment of a statistical agency to extend standing to unrelated 501(c)(3) organizations to sue. The purpose of the statute is clearly to collect data. Here, Defendant's statistical center did collect the data as it was reported, compiled a report, and presented what was reported at the time it was reported. No further action is taken on the data, and the Defendant has no control over what independent, third-party organizations such as the Carnegie Foundation do with the data, or how erroneously reported data impacts categories developed by third-party organizations like the Carnegie Foundation.

Plaintiff is far removed from the statistics gathering process and its interests are so marginally related with the purpose of the statute (authorizing the collection

of statistics) that Congress did not intend to permit a third-party lawsuit and warrants dismissal of Plaintiff's lawsuit.

**c. There is no direct interference with core activities and no "mission frustration."**

Plaintiff, in its own words, "is a nonpartisan 501(c)(3) advocacy organization whose mission is to improve healthcare outcomes, to address nursing and physician shortages, and to strengthen the research ecosystem in Georgia." *See* [Doc. 1, ¶ 17].

Plaintiff's Complaint fails to plead sufficient grounds to establish that there was any interference with core activities as a result of the Defendant's actions. Nothing Defendant did, or did not do, affects Plaintiff's ability to advocate for improved healthcare outcomes. Augusta University's degree programs continue unchanged and continue to educate students to enter health care professions. While Plaintiff can advocate for strengthening the "research ecosystem" nothing the Defendant did actually affected said "ecosystem." The Defendant merely compiles and publishes statistics reported to it by higher education institutions.

Plaintiff's true complaint, which it is attempting to promote on behalf of Augusta University, is with the Carnagie Foundation. Augusta University has already appealed various issues directly with Carnegie Foundation. Augusta University successfully persuaded the Carnegie Foundation to change Augusta University's institutional classification to that of a "Special Focus: Medical Schools and Centers" but was unsuccessful in persuading it to alter Augusta University's research classification from "R2" to "R1." *See* [Doc. 1-4]. Even if Defendant altered the statistical data as Plaintiff requests, there is no indication that the Carnegie

Foundation would revisit the appeal that Augusta University lost. Accordingly, it is illustrative of Plaintiff's defective standing, i.e., Plaintiff is not the party injured and Defendant is not the party that has the ability to remedy any alleged injury to a non-party, in this case Augusta University.

As Plaintiff lacks standing to prosecute its claims and Defendant lacks the ability to provide a remedy for any alleged injury, the Court should dismiss this action with prejudice for lack of subject matter jurisdiction and for Plaintiff's failure to state a claim.

## II. Plaintiff is not the real party in interest.

The Federal Rules of Civil Procedure require an action to be prosecuted by the real party in interest. *See* Fed. R. Civ. P. 17(a). "The aim of the rule is to protect defendants from subsequent similar actions by the party actually entitled to recover." *BP Oil, Inc. v. Bethlehem Steel Corp.*, 536 F. Supp. 293, 295 (E.D. Pa. 1982); *see also Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1080 (11th Cir. 2003) (holding the purpose of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."). A party can resort to the jurisdiction of a federal court "only when <u>the plaintiff himself</u> has suffered 'some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added).

The organizational Plaintiff has suffered no injury as a result of the Defendant's action or inaction. Plaintiff's complaint fails to identify any threatened

or actual injury to itself resulting from what Plaintiff asserts is an illegal action by the Defendant. In fact, Plaintiff could not have been injured, as it was incorporated after the alleged injury was complete and, as such, was not even in existence when Augusta University inaccurately reported the Erroneous Augusta University Data. Even taking everything asserted in Plaintiff's complaint as true, Plaintiff simply fails to raise any actual or imminent injury to itself that was caused by Defendant, and its claim is purely speculative. The real party in interest is Augusta University, who has apparently elected not to join this litigation.

## III. Plaintiff, even if it were the real party in interest, has failed to join required parties.

In addition to requiring civil actions to be prosecuted by the real party in interest, the federal rules also require necessary parties to be joined, if feasible. *See* Fed R. Civ. P. 19(a). A party is considered "necessary" to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings. *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999). When a necessary party is not joined, plaintiff is required to plead the reasons for not joining the necessary party. *See* Fed R. Civ. P. 19(c).

Plaintiff failed to include the Carnegie Foundation as a Defendant. In the absence of the Carnegie Foundation, the Court is unable to accord complete relief, as only the Carnegie Foundation can change Augusta University's R2 status to R1. Without that ultimate change, none of the injuries that Plaintiff alleges in its

Complaint are resolved. Plaintiff has also failed to plead the reasons for not joining the Carnegie Foundation.

Plaintiff's Complaint also fails to understand the (lack of) relationship between the Defendant and the Carnegie Foundation. Defendant does not send any data to the Carnegie Foundation. Defendant publishes data to the public via a public website at https://nces.ed.gov/ipeds/use-the-data where the data may be accessed by any entity, for any purpose. Institutions of higher education enter their data in the system. Before the data can be submitted, there are a series of automated edit checks that look for common errors. Once data passes quality control in the system, institutions are asked to "lock" their data. For some campuses – including the campus in question – there's a second "sign off" by a higher level entity (e.g., their state higher education system office). Once data is submitted, there is a second set of quality control activities that are run by Defendant's contractors prior to the files becoming provisional. If any quality control errors are found, said contractors reach out to the institutions to verify the data. Following this extensive process, the data becomes "provisional," and is published to the public website. **At no point is data "transmitted" to the Carnegie Foundation by Defendant.** The Carnegie Foundation makes determinations relative to "categories" based upon data available to the public, which is provided by the higher education institutions themselves.

Plaintiff's own Complaint admits that even upon appeal to Carnegie Foundation, the request for recategorization was denied. Without having joined the Carnegie Foundation as a party, the Court would be unable to order any ultimate

relief. Arguments that the Carnegie Foundation would voluntarily update the category are purely speculative. Further, the Carnegie Foundation has already denied Augusta University's appeal to have its categorization changed and it has an interest in the current proceeding, in which Plaintiff is attempting to have the Carnegie Foundation's categorization of Augusta University altered through litigation.

Finally, Augusta University and the University System of Georgia should have been joined as parties since their report of the Erroneous Augusta University Data is allegedly the direct and proximate cause of any of Plaintiff's purported injuries. It is the higher education institution's responsibility to report their programs of studies and Defendant has no basis for questioning the reported statistics.

**CONCLUSION**

For the reasons set forth herein, the Complaint should be dismissed.

Respectfully submitted,

MARGARET E. HEAP
UNITED STATES ATTORNEY

/s/ *Jason W. Blanchard*
Assistant United States Attorney
Georgia Bar No. 105620
U.S. Attorney's Office
Post Office Box 2017
Augusta, Georgia 30903
Telephone: (706) 724-0517
Jason.Blanchard@usdoj.gov